1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                               DISTRICT OF NEVADA

7                                      * * *
                                         )
8    LESLIE J. SHAW,                      )
                                         )
9               Plaintiff,               )          3:13-CV-0445-LRH-VPC
                                         )
10   v.                                   )
                                         )          ORDER
11   CITIMORTGAGE, INC.; *et al.*,        )
                                         )
12              Defendants.              )
                                         )
13   _____)

14          Before the court is defendant CitiMortgage, Inc.'s ("CitiMortgage") motion for summary

15   judgment on plaintiff Leslie J. Shaw's ("Shaw") second amended complaint (Doc. #109[1]).

16   Doc. #137. Plaintiff Shaw filed an opposition (Doc. #139) to which CitiMortgage replied

17   (Doc. #142).

18   **I.      Facts and Procedural History**

19          This is a wrongful foreclosure and breach of contract action brought by Shaw against

20   defendants. In 2003, Shaw obtained a residential loan from non-party Lehman Brothers Bank

21   ("Lehman Brothers") for a property located in Zephyr Cove, Nevada. The loan was secured by a

22   promissory note and deed of trust in favor of Lehman Brothers. Shortly thereafter, the loan was

23   transferred from Lehman Brothers to defendant the Bank of New York in its trust capacity.

24          Shaw initially made the requisite mortgage payments to non-party Aurora Loan Services

25   (who acted as loan servicer until June 2005) and then to defendant CitiMortgage until 2011. In May

26

     _____

     [1] Refers to the court's docket entry number.

2011, Shaw and CitiMortgage allegedly entered into a loan modification agreement that reduced the monthly mortgage payments for the property. In July 2011, CitiMortgage allegedly repudiated the agreement and forwarded Shaw a new modification agreement. Shaw refused this new agreement and in August 2011, CitiMortgage allegedly resolved Shaw's mortgage account and re-booked his payments under the original May 2011 modification agreement. However, in December 2011, CitiMortgage again allegedly repudiated the May 2011 loan modification agreement. Thereafter, Shaw refused to make any loan payments and CitiMortgage initiated non-judicial foreclosure proceedings on the property.

Subsequently, on July 26, 2013, Shaw filed a complaint against defendants for wrongful foreclosure. Doc. #1, Exhibit 1. Shaw filed an amended complaint (Doc. #52) and then a second amended complaint (Doc. #109). In his second amended complaint Shaw alleges eight (8) causes of action against defendants: (1) declaratory relief against defendant Bank of New York; (2) declaratory relief against defendant CitiMortgage; (3) breach of contract; (4) breach of the covenants of good faith and fair dealing; (5) fraudulent misrepresentation; (6) negligent misrepresentation; (7) interference with prospective economic advantage; and (8) violation of the Real Estate Settlement Procedures Act. Doc. #109.

On September 11, 2014, defendant CitiMortgage filed a motion to dismiss (Doc. #113) which was granted in-part and denied in-part by the court (Doc. #128). In the court's order, the court dismissed Shaw's fifth cause of action for fraudulent misrepresentation and sixth cause of action for negligent misrepresentation. *See* Doc. #128.  Thereafter, CitiMortgage filed the present motion for summary judgment on the remaining claims in Shaw's second amended complaint. Doc. #137.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.    Discussion**

**A.  Declaratory Relief as to Defendant CitiMortgage**

In his complaint, Shaw seeks an order from the court declaring the initial May 2011 loan modification agreement a permanent and enforceable loan modification agreement. In contrast, CitiMortgage seeks to have the court determine that there was no valid and enforceable loan modification agreement or, in the alternative, that any such loan modification agreement was

1  extinguished when Shaw failed to make the modified loan payments after CitiMortgage agreed to
2  re-book the modification agreement in June 2012.

3       Here, the existence and validity of the loan agreement is greatly disputed by the parties. For
4  example, defendant CitiMortgage contends that it never signed the May 2011 loan agreement or
5  received any consideration for the agreement. In contrast, Shaw has proffered evidence that the
6  only signed and enforceable loan modification agreement is the May 2011 agreement that was
7  executed by both parties. As such, the court finds that there are disputed issues of material fact that
8  precludes summary judgment on this claim.

9       **B.  Breach of Contract and Breach of Implied Covenants**

10      To prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a
11  valid contract; (2) a breach by the defendant; and (3) damages resulting from defendant's breach.
12  *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006); *Brown v. Kinross Gold*
13  *U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008).

14      Further, under Nevada law, "[e]very contract imposes upon each party a duty of good faith
15  and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d
16  9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). To establish a claim for
17  breach of the implied covenant of good faith and fair dealing, a plaintiff must show that: (1) the
18  plaintiff and defendant were parties to a contract; (2) the defendant owed a duty of good faith and
19  fair dealing to the plaintiff; (3) the defendant breached his duty by performing in a manner
20  unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied.
21  *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis*
22  *Prod. Inc.*, 808 P.2d 919, 922-23 (Nev. 1991).

23      In its motion, CitiMortgage argues that it has cured any repudiations of the alleged May
24  2011 loan modification agreement and thus, it cannot be liable for any breach of contract. Further,
25  CitiMortgage contends that Shaw is not entitled to any damages for CitiMortgage's breach because
26  Shaw has refused to perform under the loan modification agreement. Specifically, CitiMortgage

4

argues that it has repeatedly agreed at several different times prior to and during this litigation to reinstate Shaw's loan and waive all late fees under the payment plan developed under the May 2011 loan modification agreement, but that despite its agreement to reinstate the loan, Shaw has refused to make the necessary catch-up payments from December 2011. Thus, CitiMortgage contends that Shaw's decision to not pay past due amounts precludes a finding that CitiMortgage breached the agreement.

The court has reviewed the documents and pleadings on file in this matter and finds that similar to Shaw's declaratory relief claim, there are disputed issues of material fact which preclude summary judgment on Shaw's contract based claims. For example, Shaw has proffered sufficient evidence to support that he and CitiMortgage entered into a final and binding loan modification agreement in May 2011 that permanently reduced his mortgage payments and that CitiMortgage repeatedly breached that agreement. Further, CitiMortgage's claim that there can be no damages for its breach because Shaw has refused to make any payments since CitiMortgage's second repudiation is unavailing. Evidence that CitiMortgage twice breached that agreement is sufficient to raise disputed issues of fact as to whether or not CitiMortgage's offers to reinstate the loan were genuine. The court finds that it was reasonable for Shaw to have refused to make additional payments under the breached contract without some assurance by CitiMortgage that it was going to uphold and comply with the contract. Shaw has sought such assurance with the present lawsuit. The fact that Shaw is wary of believing CitiMortgage's statements and pledges prior to and during this litigation is not a basis to preclude his breach of contract claim.

Moreover, Shaw has proffered evidence that throughout the history of his loan after May 2011, CitiMortgage has acted in a manner to frustrate the purpose of the modification agreement. In fact, CitiMortgage's decision to twice breach the contract and require Shaw to make up any payments after its breach before first reinstating the loan is evidence that CitiMortgage's conduct "deliberately countervenes the intention and spirit of the contract." *Morris v. Bank of America*, 886 P.2d 454, 457 (Nev. 1994). Thus, based on the disputed issues of material fact, the

court finds that CitiMortgage is not entitled to summary judgment on Shaw's claims for breach of contract and breach of the implied covenants of good faith and fair dealing.

### C. Interference with Prospective Economic Advantage

Shaw's claim for intentional interference with prospective economic advantage relates solely to CitiMortgage's alleged failure to negotiate and approve a short sale of Shaw's property. In its motion, CitiMortgage contends that the court should enter judgment on this claim because a loan servicer has no duty to negotiate or approve a short sale and therefore, it had no duty to approve, act on, or even acknowledge the two separate short sale offers Shaw received on the property. The court disagrees.

Generally, a loan servicer like CitiMortgage has no duty to approve a short sale. *See Blanford v. Suntrust Mortgage, Inc.*, 2012 U.S. Dist. LEXIS 141666, *11 (D. Nev. 2012). However, in this action Shaw has proffered sufficient evidence to support a finding that CitiMortgage specifically requested Shaw put his home on the market as a short sale and directly forward any offer to CitiMortgage's counsel, only to ignore the offers Shaw received. Thus, in contrast to the *Blanford* case, CitiMortgage created the duty to consider and respond to short sale offers by affirmatively requesting that Shaw list the house as a short sale. Therefore, the court shall deny defendants' motion as to this claim.

### D. Real Estate Settlement Procedures Act

In his last cause of action, Shaw alleges that CitiMortgage violated the Real Estate Settlement Procedures Act ("RESPA") when it failed to provide Shaw with certain contact information about his residential home loan lender upon receiving a qualified written request. *See* 12 U.S.C. § 2605(k)(1)(D) (entitling homeowners, upon submission of a qualified written request, to the contact information for an owner or assignee of a mortgage loan for residential property. 12 U.S.C. § 2605(k)(1)(D). Further, Shaw alleges that CitiMortgage failed to cease reporting adverse credit information to credit agencies after he filed his qualified written request. *See* 12 U.S.C. § 2605(e) (requiring that a servicer cease reporting a borrower's disputed payments as adverse

6

1   information to any consumer reporting agency during the 60 days following the servicer's receipt of

2   a qualified written request).

3            In its motion, CitiMortgage argues that because Shaw wishes to negotiate a loan

4   modification on his non-performing loan, the relevant contact information is necessarily that of

5   CitiMortgage. As such, Shaw had all necessary information to negotiate his loan modification and

6   therefore, even if CitiMortgage did not properly respond to the qualified written request,[2] there was

7   no harm because Shaw had the requisite information. However, Shaw contends that he received the

8   wrong information identifying his lender including incorrect contact information, a disconnected

9   telephone number, and a non-existent e-mail address. Further, Shaw has proffered evidence

10  showing that CitiMortgage continued to report Shaw as delinquent on his loan account for the sixty

11  days after receiving his qualified written request. Therefore, the court shall deny CitiMortgage's

12  motion as to this claim.

13

14           IT IS THEREFORE ORDERED that defendant's motion for summary judgment

15  (Doc. #137) is DENIED.

16           IT IS FURTHER ORDERED that the parties shall have sixty (60) days after entry of this

17  order to prepare and file a joint proposed pretrial order with the court.

18           IT IS SO ORDERED.

19           DATED this 25th day of June, 2015.

20           _____

21           LARRY R. HICKS
             UNITED STATES DISTRICT JUDGE

22

23

24

25           [2] It is undisputed that Shaw sent a letter to the address provided to him on the notice of default and
     election to sell. In response to that letter, CitiMortgage advised him that it would treat his letter as a qualified
26   written request under RESPA.