1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **DISTRICT OF NEVADA**
10

11   LESLIE J. SHAW,                          Case No. 3:13-cv-00445-LRH-VPC

12                    Plaintiff,              **[PROPOSED]**
                                              **JOINT PRETRIAL ORDER**
          v.
13
     CITIMORTGAGE, INC., NORTHWEST
14   TRUSTEE SERVICES, INC., and DOES 1 through
     10, inclusive,
15
                     Defendants.
16

17

18          Following pretrial proceedings in this cause,

19          IT IS ORDERED:

20                                    **I.**

21              **NATURE OF ACTION / PARTIES' CONTENTIONS**

22          This is an action for: declaratory relief, breach of contract; breach of covenant of good faith

23   and fair dealing; interference with prospective economic advantage; and violation of the Real Estate

24   Settlement Procedures Act.

25                                    **II.**

26                        **COURT JURISDICTION**

27          Statement of Jurisdiction: Federal questions (28 U.S.C. 1331); diversity jurisdiction

28   (28 U.S.C. 1332); and supplemental jurisdiction (28 U.S.C. 1367).

                                      1
                            **JOINT PRETRIAL ORDER**

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

**III.**

**FACTS ADMITTED AND REQUIRE NO PROOF**

The following facts are admitted by the parties and require no proof: The parties are not in agreement to any facts that require no proof:

**IV.**

**FACTS NOT ADMITTED  BUT WILL NOT BE CONTESTED AT TRIAL**

**BY EVIDENCE TO THE CONTRARY**

A.      The following facts, though not admitted by Defendant, are proposed by Plaintiff, LESLIE J. SHAW (hereinafter "Plaintiff), to be facts to which there will be no contested evidence, to the contrary, presented by Defendant:

1.      That at all times from his May 18, 2011 execution of the "Citi Affordable Modification Agreement", by and through December 31, 2011, Plaintiff was in full and timely compliance of his obligations to Defendant under that Agreement;

2.      That between July 18 and July 20, 2011, both dates inclusive, Defendant decided, for the first time, to breach the aforesaid "Citi Affordable Modification Agreement", to unbook all of Plaintiff timely payments previously made to Defendant pursuant to that Agreement, advise Plaintiff, in writing, that he was then delinquent on his obligations under the Agreement, and further to advise Plaintiff, in writing, that his request for modification of his prior loan terms was denied;

3.      That whenever Defendant unbooked the Plaintiff's "Citi Affordable Modification Agreement", and the payments thereunder, it charged his loan account number (0626380390) the unmodified monthly payments sum of approximately $4,100 instead of the modified and lesser sum of approximately $3,200, so that Plaintiff's payment of the lesser, modified sum still left his aforesaid account, according to Defendant, to be in default and delinquent;

4.      That while Defendant did, by writing of August 25, 2011, advise Plaintiff that it would begin, once again, accepting payment under the aforesaid "Citi Affordable Modification Agreement", it continued, from that date to the present, to assess Plaintiff's loan account (0626380390), as delinquent, in default, past due, and subject to collection;

2

**JOINT PRETRIAL ORDER**

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

5.      That in December of 2011, and thereafter, through and inclusive of the present date, Defendant decided, for the second time, to breach, and thereafter denied the existence of, the "Citi Affordable Modification Agreement" signed by the parties as set forth above, advised Plaintiff, in writing, that he would not be granted a modification of his prior loan terms unless and until he signed a new and different "Citi Affordable Modification Agreement" than that signed by the parties as described by;

6.      That in early 2012, Defendant represented to Plaintiff a different form of "Citi Affordable Modification Agreement", containing a new and different terms and provisions than that signed by the parties as set forth above, and advised Plaintiff, in writing, that he would not be granted a modification of his prior loan terms unless he signed same;

7.      That the proposed, new and different "Citi Affordable Modification Agreement" is the very same document that Defendant advised Plaintiff, in writing, in August of 2011, he need not sign; a representation communicated to Plaintiff by Defendant upon representation of the "Citi Affordable Modification Agreement", by Defendant, in early 1012;

8.      That the insistence of Defendant, in early 2012, that Plaintiff sign a new and different form of "Citi Affordable Modification Agreement", which he had previously told by Defendant he need not sign, was presented, and his execution thereof demanded, after discussion of same with both the Legal and Underwriting Departments of Defendant;

9.      That in early 2012, Defendant, by and through its Collections Department, advised Plaintiff that if he wanted to get Defendant's attention, he should stop making his mortgage payments.  That beginning in January of 2012, and continuing to the present, Plaintiff has ceased making payments, in any sum, to Defendant;

10.     That in June of 2012, Defendant offered to Plaintiff, in writing, a reinstatement of his loan account, bearing the number set forth above, on conditions, identifying the controlling loan agreement of his account No. 0626380390; there being no August, 2012 loan agreement between the parties hereto;

11.     In February, 2013, Plaintiff sent to Defendant a correspondence deemed by Defendant to be a "Qualified Written Request" pursuant to the Real Estate Settlement and

3

**JOINT PRETRIAL ORDER**

2103599.1

Procedures Act, and promising a response thereto within the statutory time period for response;

12.  That beginning with the month of January, 2012, and continuing to the present, Defendant reported to credit reporting agencies the default and delinquency of Plaintiff on his loan account, the number of which are set forth above, including immediately after, and without interruption from, its receipt of the "Qualified Written Request" set forth above;

13.  That at or about the same time, and in February of 2013, Plaintiff forwarded to Defendant, through its Homeowners Assistance Department, an accepted short sale offer on the property which is the subject of this action, commonly identified as 251 McFaul Court, Zephyr Cove, Nevada 89448.  The term of that short sale offer, being 30 days, was extended by Plaintiff on two subsequent occasions before that offer expired, by its own terms, after 90 days. At no time during the 90-day period did Defendant either approve or disapprove the accepted short sale offer;

14.  That in April of 2013, in apparent response to Plaintiff's "Qualified Written Request", Defendant, by and through it's the writings of its Default Specialist, advised Plaintiff, in writing, that while he had qualified for a loan modification agreement with Defendant, Plaintiff had never signed and returned the necessary papers and therefore no loan modification had ever been entered into between the parties.  Defendant had the subject single-family dwelling appraised as of April, 2013 and determined its fair market value to be $1,082,000;

15.  That in August of 2013, Plaintiff once again accepted a short sale offer on the aforesaid single-family residence which is the subject of these proceedings, and forwarded those papers to Defendant by and through its Homeowners Assistance Department. That offer was valid for 30 days, and after two subsequent extensions granted by Plaintiff, expired by its own terms after 90 days without a response as to acceptance or rejection by Defendant;

16.  That in December of 2013, the subject single-family dwelling was off the market for sale when Defendant, by and through Colt B. Dodrill, Wolfe & Wyman LLP, attorneys for Defendant, directed Plaintiff to place the property back on the market for short sale;

17.  That in so directing Plaintiff as set forth in the preceding paragraph, Defendant directed Plaintiff to forward any accepted short sale offers not to its Homeowners Assistance Department, but directly to Mr. Dodrill for action;

**JOINT PRETRIAL ORDER**

18.     By April 14, 2014, consistent with Defendant's direction of December 4, 2013, Plaintiff received, accepted, and forwarded to Defendant a short sale offer on the subject single-family dwelling, which thereafter expired by its own terms with no response by Defendant;

19.     By July 41, 2014 consistent with Defendant's direction of December 4, 2013, Plaintiff received, accepted, and forwarded to Defendant a short sale offer on the subject single-family dwelling, which thereafter expired by its own terms with no response by Defendant;

20.     That the real estate community, in and around the location of the subject single-family dwelling, is aware of the non-response of Defendant to accepted short sale offers presented to Defendant by Plaintiff;

21.     That according to the files and reports of the parties respective of expert witnesses on such subject, the aforesaid single-family dwelling is now stigmatized such that local real estate salespersons and brokers in the vicinity of the subject single-family dwelling will not show it to potential buyers, negatively impacting its marketability;

22.     That Plaintiff's credit worthiness, and the report thereof through credit reporting agencies, has been negatively impacted by Defendant's report of the status of Plaintiff's loan account in this matter, both before, during and after the response period relative to Plaintiff's "Qualified Written Request" mentioned above; and

23.     That Plaintiff has incurred attorney's fees, court costs, and other taxable expenses in the prosecution of his claims against Defendant, and the claims and defenses of the Defendant asserted against him in this matter, and that the original Promissory Note signed by Plaintiff in October of 2003 provides for recovery of such attorney's fees and costs in such legal and related matters defined therein.

B.     The following facts, though not admitted by Plaintiff, are proposed by Defendant to be facts to which there will be no contested evidence, to the contrary, presented by Plaintiff:

1.     The parcel of real property at issue is commonly referred to as 251 McFaul Court, in Zephyr Cove, Nevada ("Subject Property");

2.     On or about October 8, 2003, Plaintiff executed a promissory note in favor of Lehman Brothers Bank, FSB, a federal savings bank for a loan in the original amount of

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1   $875,000.00 with an adjustable interest rate of 5.125%, secured by a first position deed of trust

2   recorded against the Subject Property ("Subject Loan");

3          3.    On or about September 20, 2007, Plaintiff obtained a loan from Katherine

4   Barkley in the original amount of $225,000, secured by a second position deed of trust recorded

5   against the Subject Property;

6          4.    On or about September 20, 2007, Plaintiff obtained a loan from Janice E.

7   Shaw in the original amount of $77,123.50, secured by a third position deed of trust recorded against

8   the Subject Property;

9          5.    At all relevant times to this litigation, Defendant was the loan servicer of the

10   Subject Loan on behalf of the investor, Bank of New York Mellon, as Trustee SASCO 2003-37A;

11          6.    That in May 2011, the parties executed a "Citi Affordable Modification

12   Agreement" ("May Modification");

13          7.    That in July 2011, Defendant forwarded Plaintiff correspondence advising that

14   a corrected version of the "May Modification" needed to be executed to clarify the balloon payment

15   language;

16          8.    On August 23, 2011, Defendant forwarded Plaintiff a correspondence

17   confirming it resolved Plaintiff's inquiry by reinstating the May Modification as of August 2011;

18          9.    On June 13, 2012, Defendant again agreed to reinstate the May Modification

19   and forwarded Plaintiff correspondence agreeing to waive all late fees and advising of the amount

20   necessary for Plaintiff to make his obligations current under the May Modification;

21          10.    On June 20, 2012, Plaintiff rejected Defendant's offer to reinstate the May

22   Modification and refused to make the payments necessary to cure his default;

23          11.    In correspondence dated January 3, 2012, Plaintiff requested "the identity  and

24   contact information of [his] lender;

25          12.    In correspondence dated January 9k, 2012, Defendant provided Plaintiff with

26   the contact information of Aurora Loan Services, LLC ("Aurora");

27          13.    On January 20, 2012, Plaintiff wrote Defendant and requested to know "who

28   the owner of [his] loan is";

**JOINT PRETRIAL ORDER**

2103599.1

14. In correspondence dated February 13, 2012, defendant provided Plaintiff with Aurora's contact information;

15. In correspondence dated June 20, 2012, Plaintiff demanded to be "in direct communication with someone with settlement authority on behalf of the bondholders, who as participants in the entity identified as SACCO 200337A are the investors in the loan now serviced by Citi[M]ortgage";

16. In correspondence dated June 21, 2012, Defendant provided Plaintiff with an email address of Deborah Lenhart at Aurora;

17. In correspondence dated January 29, 2013 and addressed to Defendant in care of Northwest Trustee, Plaintiff summarized his efforts to obtain the identity of the owner of his loan;

18. Plaintiff vacated the Subject Property as of August 2012; and

19. No payment has been made on the Subject Loan since December 2011.

20. Plaintiff does not wish to further reside in the Subject Property.

21. Plaintiff does not wish to further possess the Subject Property.

22. Plaintiff does not want a financial relationship with CMI.

## V.

## ISSUES OF FACT TO BE TRIED AND DETERMINED UPON TRIAL

Plaintiff proposes the following are the issues of fact to be tried and determined upon trial:

A. On October 8, 2003, Plaintiff, LESLIE J. SHAW (hereinafter "Plaintiff") signs a Promissory Note evidencing his obligation to repay a residential home loan obtained from Lehman Brothers Bank;

B. On May 18, 2011, Plaintiff executes and forwards to Defendant a "Citi Affordable Modification Agreement" changing the repayment terms of his home loan then being serviced by Defendant;

C. That on June 30, 2011, Defendant signs, and thereby completed execution of, that same Citi Affordable Modification Agreement;

D. That on July 18, 2011, Defendant notifies Plaintiff, in writing, that his subject loan is in default. At that time, Plaintiff was, and at all times relevant to said Citi Affordable

7

2103599.1

1  Modification Agreement had been, in full and complete compliance with all payment and other

2  obligations he had under that Agreement;

3          E.     On July 20, 2011, Defendant notifies Plaintiff, in writing, that his request for a

4  mortgage modification could not be approved. From December, 2011 through April, 2012, both in

5  writing and verbally, Defendant demands Plaintiff sign a new and different loan modification

6  agreement while denying the existence of the signed Agreement of the parties;

7          F.     By letter dated January 9, 2012, Defendant advises Plaintiff that the owner of

8  his mortgage was: Aurora Loan Services, LLC, 10350 Park Meadows Drive, Littleton, Colorado

9  80124, (720) 945-4682;

10          G.     On June 1, 2012, Defendant notifies Plaintiff of a reinstatement plan to

11  reinstate his "August 2011" loan modification agreement;

12          H.     On January 3, 2013, Defendant, by and through its trustee agent, Northwest

13  Trustee Services, records a Notice of Default and Election to Sell with regard to Plaintiff's residence

14  encumbered by the Deed of Trust in favor of Lehman Brothers Bank executed in October of 2003;

15          I.     On February 6, 2013, Defendant acknowledges receipt of a qualified written

16  request from Plaintiff;

17          J.     On April 6, 2013, Defendant advises Plaintiff in writing that while he

18  qualified for a loan modification agreement, none was ever entered into by the parties due to

19  Plaintiff's failure to sign and return necessary documents;

20          K.     Defendant, by and through its foreclosure agent, Northwest Trustee Services,

21  notices a foreclosure sale of Plaintiff's subject residence for August 9, 2013;

22          L.     On December 4, 2013, Defendant directs Plaintiff to list his home for sale as a

23  "short sale", and to forward any accepted short sale offers to Colt B. Dodrill, Attorney at Law,

24  Wolfe & Wyman LLP, Las Vegas, Nevada, for Defendant's consideration and action;

25          M.     On April 14, 2014, Plaintiff forwards an accepted short sale offer for sale of

26  his residence to Colt B. Dodrill, Attorney at Law, Wolfe & Wyman LLP, Las Vegas, Nevada; and

27          N.     On July 14, 2014, Plaintiff forwards another accepted short sale offer for sale

28  of his residence to Colt B. Dodrill, Attorney at Law, Wolfe & Wyman LLP, Las Vegas, Nevada.

8

**JOINT PRETRIAL ORDER**

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

O. That the "Citi Affordable Modification Agreement" signed in May and June of 2011, is acknowledged, by both parties (although disregard by Defendant), to be a contract considered by both of them to be valid, binding, legally enforceable and controlling between the two of them, at all times relevant hereto;

P. That despite believing the aforesaid "Citi Affordable Modification Agreement" to be of such description, Defendant nonetheless willfully and deliberately decided to breach that contract for the first time in August of 2011, and for the second time in or about December of that same year;

Q. That the claims, assertions and contentions of the Defendant, at all times relevant hereto, including all times leading up to and through the pendency of these proceedings, that such "Citi Affordable Modification Agreement" was not binding, not legally enforceable, not valid, and not controlling between the parties, has caused financial damage to the Plaintiff and created a need for a declaration by the Court of the validity, legal sufficiency, enforceability and binding nature of that contract;

R. That the Defendant's willful and repeated breach of that contract has created damages to the Plaintiff, including, but not limited to, loss and/or impairment of the value of the subject single-family dwelling, interference with its marketability and sale, subjection of the Plaintiff to continued and otherwise unnecessary payment of debt service on two other loans secured against that same property after Defendant's interference with the marketability and/or sale thereof, impairment and destruction of Plaintiff's credit rating and credit worthiness, and damages for delays in resolution of the controversies and conflicts surrounding the "Citi Affordable Modification Agreement" by the violations of the Real Estate Settlement Procedures Act by Defendant's willful disregard of, and failure to comply with the legal requirements attended to, Plaintiff's submission of a "Qualified Written Request" to Defendant in February of 2013;

S. That despite the provisions of Nevada law imposing a covenant of good faith and fair dealing in all contracts at issue herein, Defendant purposefully, willfully, intentionally, and with specific purpose and goal of denying Plaintiff the benefit of the "Citi Affordable Modification

**JOINT PRETRIAL ORDER**

2103599.1

Agreement" set forth above, breached that covenant of good faith and fair dealing, and did so for the purpose of causing harm to the Plaintiff;

       T.    That Defendant's intentional interference with both the purposes and spirit of Plaintiff's agreement to Defendant's direction to market his home for short sale, and to submit all accepted short sale offers directly to Defendant by and through Colt B. Dodrill, Wolfe & Wyman LLP, has deprived Plaintiff of the fair market value of the subject single-family dwelling and the availability of the value thereof be to be applied to his debts and obligations secured against that property;

       U.    That the intentional interference with the spirit and purposes of the agreement set forth in the preceding paragraph was intentional, willful, and purposeful, in Defendant's efforts to make impossible the successful satisfaction of the goals and benefits of that agreement; and

       V.    That the attorney's fees, litigation costs, and other taxable costs incurred by the Plaintiff in this matter, as the result of Defendant's breach of the aforesaid "Citi Affordable Modification Agreement", the denunciation of the very existence of that Agreement, the breach of the covenant of good faith and fair dealing applicable to that Agreement, Defendant's interference with the prospective economic advantage of Plaintiff to be occasioned by Defendant's review and response to short sale offers he accepted on or after December 5, 2013, and interference with Plaintiff's ability to contact and interact with the owner/lender/investor on his loan obligation both before Defendant's acknowledgment of a proper "Qualified Written Request" from Plaintiff in February of 2013, and before upon Defendant's acknowledgment, in writing, that its contact information for such owner/lender investor given by Defendant to Plaintiff, being a disconnected telephone number and invalid e-mail address, was all the information Defendant was to provide to Plaintiff; information that was, indeed, for an entity that had no ownership/investment/lender interest in Plaintiff's loan.

      Defendant proposes the following are the issues of fact to be tried and determined upon trial:

      a.    Whether CMI breached the May Modification;

      b.    Whether CMI repudiated the May Modification;

c.      Whether CMI has acted in a manner to frustrate the purpose of any loan modification agreement relating to the Subject Loan;

d.      Whether CMI has interfered with any prospective economical advantage in relation to Plaintiff's prior short sale offers;

e.      Whether CMI has violated RESPA in any manner;

f.      Whether Plaintiff has suffered any damages as a result of any matters alleged in the Complaint;

g.      Whether punitive damages are appropriate in this action.

## VI.

## ISSUES OF LAW TO BE TRIED AND DETERMINED UPON TRIAL

A.      The parties were unable to agree upon, and therefore stipulate to, a common statement of issues of law to be tried and determined upon trial.  Accordingly, Plaintiff submits the following issues of law are to be tried and determined upon trial herein:

1.      Did the parties hereto enter into a valid, enforceable, legally binding and controlling "Citi Affordable Modification Agreement" in May/June, 2011?

2.      Did Defendant wrongfully, willfully, and/or intentionally, breach that Agreement, initially, in July of 2011?

3.      Did Defendant subsequently, and again, willfully and intentionally breach that Agreement in or about December of 2011, with the discussion and/or concurrence of its Legal and Underwriting Departments?

4.      Did Defendant willfully, purposefully, unreasonably, and without any legal justification, denounced the existence, as well as, if existent, the legal validity, enforceability, sufficiency and binding nature of that Agreement while at all times deeming it to be a valid, binding, legally enforceable and controlling contract with the Plaintiff?

5.      Is there a genuine controversy between the parties, requiring a declaration of this Court, as to whether or not the aforesaid "Citi Affordable Modification Agreement" is a valid, enforceable, legally sufficient binding contract between the parties? And if so, is that Agreement of such description?

**JOINT PRETRIAL ORDER**
2103599.1

6.     Has the Plaintiff been damaged by the Defendant's willful and intentional breach, on two occasions, of the aforesaid "Citi Affordable Modification Agreement"? If so, what is the measure of those damages?

7.     Did Defendant breach the implied covenant of good faith and fair dealing as applied to the "Citi Affordable Modification Agreement" set forth above, and was Plaintiff damaged thereby?

8.     Did Defendant's direction to Plaintiff, and his acceptance of that direction, to list his home for short sale in December of 2013, and thereafter submit any offers for short sale that he accepted directly to Colt B. Dodrill, Wolfe & Wyman LLP, create a duty on the part of the Defendant to address any such submitted short sale offers in good faith and in reasonable fashion?

9.     Did Defendant's failure and refusal to respond, in any fashion, to accepted short sale offers submitted by Plaintiff to Defendant, in the manner set forth in the preceding paragraph, breach its duties with regard to such agreed short sale process?

10.    Was Defendant's breach of the aforesaid duties, with regard to the short sale offer process, willful, intentional, and specific to undermining both the purposes and intent of the agreement of the parties for the marketing of the subject single-family dwelling as a short sale, and the submission of accepted short sale offers by Plaintiff to Defendant in the prescribed manner, from December 5, 2013 onward?

11.    If the conduct of Defendant, as addressed in the preceding two subparagraphs, was willful and intentional, what is the appropriate measure of punitive damages to be assessed against Defendant, and in favor of Plaintiff, in this matter?

12.    Did the reporting by Defendant as to the credit and lack of credit worthiness of the Plaintiff back to credit reporting agencies, beginning in January of 2012 and continuing thereafter, even during the pendency of the statutory period of consideration of same by Defendant, damage Plaintiff's credit rating credit worthiness, and if so, what is the measure of those damages?

13.    Did Defendant's failure to provide Plaintiff, when requested in writing to do so, an accurate name, a working e-mail address, and functional telephone number, for the investor/lender/owner of the subject loan, and its further failure to provide information, accurate or

otherwise, after receiving a proper "Qualified Written Request", a violation of the Real Estate Settlement and Procedures Act?

14.   If the conduct of the Defendant, set forth the preceding subparagraph, does constitute a violation of that federal Act, what is the measure of damages incurred by Plaintiff?

15.   Is Plaintiff entitled to recover against Defendant his attorney's fees, litigation costs, and other taxable costs incurred in the prosecution of his claims against Defendant herein, and his defense of the assertions and defenses of the Defendant herein, incurred prior to and during the pendency of this is a civil proceeding?

B.   Defendant submits that the following are the issues of law to be resolved upon trial:

1.   Whether the May Modification is an enforceable agreement;

2.   Whether CMI breached contractual obligations to Plaintiff;

3.   Whether CMI has prevented performance of any existing contract between the parties;

4.   Whether CMI has violated RESPA in any manner;

5.   Whether Plaintiff is entitled to any damages as a matter of law.

6.   Whether Defendant has interfered with any prospective economical advantage in relation to Plaintiff's prior short sale offers;

C.   There are no stipulations of the parties as to exhibits to be introduced as evidence in this case and to be so marked by the Clerk of the Court.

That while the parties have reached no stipulations regarding exhibits, the Parties have agree to the authenticity of the following exhibits:[1]:

a.   First Quarter Earnings of CitiGroup, dated April 16, 2015;

b.   Plaintiff's e-mail to Defendant of April 14, 2014 (with attachments);

c.   E-mail of July 14, 2014 to Defendant (with attachments);

d.   File content of Michael L. Brunson, MAA, Brunson-Jiu, LLC;

---

[1]   Plaintiff's exhibits "a" through "aaa" stipulated to by the parties in that Stipulation Regarding Authenticity of Documents, filed February 28, 2014 (Doc. No. 39) and the corresponding *Order on Stipulation re Authenticity of Documents,* filed March 4, 2014 (Doc. No. 41).

**JOINT PRETRIAL ORDER**

2103599.1

e.    E-mail dated December 24, 2010 from CMI to Plaintiff (P00001);

f.    Letter dated December, 28, 2010 from CMI to Plaintiff (P00002 - P00005);

g.    Letter dated February 15, 2011 from CMI to Plaintiff (P00006 - P00010);

h.    E-mail dated March 11, 2011 from CMI to Plaintiff (P00011);

i.    Letter dated May 18, 2011 from Plaintiff to Marina Forester, Citi (P00012 - P00020);

j.    E-mail dated May 20, 2011 from CMI to Plaintiff (P00021);

k.    Letter dated July 15, 2011 from BMO Financial Group (P00022);

l.    Letter dated July 16, 2011 from US Bank to Plaintiff (P00023);

m.    E-mail dated July 20, 2011 from CMI to Plaintiff (P00024);

n.    Letter dated July 19, 2011 from Juan Mayorga, CMI to Plaintiff (P00025 – P00034);

o.    Letter dated July 18, 2011 from CMI to Plaintiff (P00035 – P00036);

p.    Letter dated July 20, 2011 from CMI to Plaintiff (P00037 – P00038);

q.    E-mail dated July 25, 2011 from CMI to Plaintiff (P00039);

r.    Letter dated July 21, 2011 from Plaintiff to Juan Mayorga, CMI (P00040);

s.    Letter dated July 30, 2012 from Robert Orcutt, Homeowner Support Specialist, CMI to Plaintiff (P00041 - P00043);

t.    E-mail dated July 31, 2011 from Plaintiff to Chris Gabbert, CMI (P00044 - P00045);

u.    Letter dated August 2, 2011 from CMI to Plaintiff (P00046 - P00047);

v.    E-mail dated August 4, 2011 from Plaintiff to Chris Gabbert, CMI (P00048);

w.    Letter dated August 9, 2011 from CMI to Plaintiff (P00049 - P00058);

x.    E-mail dated August 23, 2011 from Dana Ross, Assistant General

14

**JOINT PRETRIAL ORDER**

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1  Counsel, CMI to Plaintiff (P00059 - P00060);

2  y.  E-mail chain dated August 23, 2011 between Plaintiff and Dana Ross,

3  Assistant General Counsel, CMI (P00061);

4  z.  Letter dated December 8, 2011 from Jennifer Butler, Homeowner

5  Support Specialist, CMI to Plaintiff (P00062 - P00063);

6  aa.  E-mail chain dated January 3-5, 2012 between Dana Ross and Plaintiff

7  (P00064 - P00065);

8  bb.  Letter dated January 9, 2012 from CMI to Plaintiff (P00066);

9  dd.  E-mail dated February 23, 2012 from Plaintiff to Jennifer Butler,

10  Homeowner Support Specialist, CMI (P00070);

11  ee.  E-mail chain dated March 9-12, 2012 between Plaintiff and Jennifer

12  Butler, Homeowner Support Specialist, CMI (P00071 - P00072);

13  ff.  Letter dated March 14, 2012 from CMI to Plaintiff (P00073);

14  gg.  E-mail chain dated March 16-27, 2012 between Plaintiff and Jennifer

15  Butler, Homeowner Support Specialist, CMI (P00074 - P00094);

16  hh.  Letter dated April 13, 2012 from Plaintiff to Aurora Loan Services

17  (P00095 - P00099);

18  ii.  Letter dated May 11, 2012 from Chris Baker, VP, Servicer  Oversight,

19  Aurora Loan Services (P00100);

20  jj.  Letter dated May 30, 2012 from Robert Orcutt, Homeowner Support

21  Specialist, CMI to Plaintiff (P00101 - P00102);

22  kk.  Letter dated May 30, 2012 from CMI to Plaintiff (P00103);

23  ll.  E-mail dated June 13, 2012 from Robert Orcutt, Homeowner Support

24  Specialist, CMI to Plaintiff (P00104);

25  mm.  Letter dated June 13, 2012 from Robert Orcutt, Homeowner Support

26  Specialist, CMI to Plaintiff (P00105 - P00106);

27  nn.  E-mail dated June 20, 2012 from Plaintiff to Robert Orcutt,

28  Homeowner Support Specialist, CMI (P00107 - P00109);

15

**JOINT PRETRIAL ORDER**

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

oo.    E-mail dated June 21, 2012 from Plaintiff to Deborah Lenhart, Aurora Bank (P00110 - P00111);

pp.    E-mail chain dated June 22-26, 2012 between Plaintiff and Robert Orcutt, Homeowner Support Specialist, CMI (P00112 - P00119);

qq.    Letter dated January 29, 2013 from Plaintiff to CMI/NWT (P00120 - P00122);

rr.    E-mail dated February 5, 2013 from Joseph Bleeker to Plaintiff (P00123 – P001214);

ss.    Standard Residential Purchase Agreement dated February 6, 2013 (P00125 – P00135);

tt.    E-mail dated February 11, 2013 from Plaintiff to Joseph Bleeker (P00136 – P00137);

uu.    Letter dated February 25, 2013 from CMI to Plaintiff (P00138);

vv.    Letter dated March 6, 2013 from Kristin Dennis, Default Research Specialist, CMI to Plaintiff (P00139 - P00187);

ww.    E-mail chain dated May 9-10, 2013 between Joseph Bleeker and Plaintiff (P00188 - P00195);

xx.    E-mail chain dated May 31 - June 4, 2013 between Joseph Bleeker and Plaintiff (P00196 - P00200);

yy.    E-mail dated June 14, 2013 from Plaintiff to Joseph Bleeker (P00201 - P00204);

zz.    E-mail dated June 22, 2013 from Plaintiff to Joseph Bleeker (P00205 - P00212);

aaa.    E-mail chain dated October 14-29, 2013 between Joseph Bleeker and Plaintiff (P00213 - P00231);

The Parties reserve the right to raise objections (other than admissibility) to the exhibits stated above.

2103599.1

Plaintiff further proposes the following exhibits, of which the authenticity has not been stipulated to:

        bbb.    CitiMortgage Earnings Statement;

        ccc.    E-mail dated April 14, 2014 between Plaintiff and Colt B. Dodrill re counteroffer for short sale;

        ddd.    E-mail chain dated July 14, 2014 between Andrew A. Bao and Plaintiff re offer for short sale;

        eee.    Residential appraisal dated August 11, 2015; and

        fff.    CMI's responses to Plaintiff's requests for admissions, set one.

Defendant further proposes the following exhibits, of which the authenticity has not been stipulated to:

        a.    Complaint;

        b.    Answer to Complaint;

        c.    The parties' initial disclosures;

        d.    Plaintiff's discovery responses to Defendant's written discovery (admissions, interrogatories, production of documents);

        e.    Defendant's discovery responses to Plaintiff's written discovery (admissions, interrogatories, production of documents);

        f.    g.    Declarations under penalty of perjury previously filed in action; and

        h.    All documents the parties have previously produced in discovery;

D.    There are no additional exhibits to which the parties have reached any stipulation.

E.    Plaintiff and Defendant reserve the right to object to the admission of any exhibit presented by the opposing party.

F.    Depositions:

    1.    Plaintiff will offer the following deposition transcripts:

        a.    Deposition of Christopher Gabbert, February 17, 2014, as follows: 25:24 through 28:8, 29:5 through 30:19, 31:10-18, 32:10 through 33:2, 37:18 through 38:24, 29:23

**JOINT PRETRIAL ORDER**

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1  through 40:8, 43:1-14, 44:14-19, 50:10 through 51:1, 53:6 through 54:21, 55:12 through 56:19, 58:9-

2  15, and 58:25 through 59:10;

3             b.     Deposition of Juan Mayorga, February 17, 2014, as follows: 15:22,

4  18:5 through 26:16, 27:6, 31:10, 33:15, 35:21, 36:9-24, 39:12, 40:17 through 41:21, 42:15-19, 43:8

5  through 44:22, 45:1-10, 48:8-19, 52:4 through 56:18, 59:20 through 61:8, 62:5-9, 64:12-17, and

6  64:18 through 66:14;

7             c.     Deposition of Robert Orcutt, February 17, 2014, as follows:  11:25

8  through 14:21, 19:6 through 10:11, 22 lines 23 through 24:10, 25:15 through 28:8, 29:1 through 31:16,

9  33:6-18, 33:19, 35:6 through 38:18, and 41:5 through 43:9;

10             d.     Deposition of Dana Ross, February 17, 2014, as follows:  10:11

11  through 22:21, 73:12 through 74:15, 75:7-14, 76:24 through 79:3, 83:9 through 84:15, 85:2-13, and

12  90:18 through 91:3; and

13             e.     Deposition of Travis Nurse, June 11, 2014, as follows: 4:9 through

14  176:6 (entire deposition transcript).

15         2.     Defendant will offer the following deposition transcripts:

16             a.     Plaintiff;

17             b.     Daniel Leck (Plaintiff's expert);

18             c.     Katherine Barkley;

19             d.     Janice E. Shaw;

20             e.     Christopher Gabbert;

21             f.     Travis Nurse;

22             g.     Robert Orcutt;

23             h.     Dana Ross; and

24             i.     Juan Mayorga.

25  G.     Objections to Depositions:

26         1.     Defendant has not identified to Plaintiff specific passages of the deposition

27  testimony of any of the above witnesses, and therefore Plaintiff is unable to set forth his objections,

28

**JOINT PRETRIAL ORDER**
2103599.1

1    if any, thereto at this time. Plaintiff offers no objections to any transcripts of depositions conducted

2    herein.

3          2.     Defendant objects to the use of the deposition testimony identified by Plaintiff

4    above, save and except for impeachment purposes, unless one of the deponents identified by

5    Plaintiff above is unavailable to testify at the time of trial.

6

**VII.**

7

**MOTIONS  IN LIMINE**

8       Defendant seeks an order of the Court setting a deadline for the submission of motions in

9    limine and time for responses thereto.

10

**VIII.**

11

**WITNESSES  WHO MAY BE CALLED**

12       The following witnesses may be called by the parties upon trial:

13    A.     State names and addresses of Plaintiff's witnesses:

14          1.     Leslie J. Shaw, Law Office of Leslie J. Shaw, 275 Hill Street, Suite 200, Reno,

15             NV 89501;

16          2.     Daniel B. Leck, MAI, 408 W. Fourth Street, P.O. Box 1180, Carson City,  NV

17             89702;

18          3.     Colt B. Dodrill, Esq., Wolfe & Wyman LLP, Wolfe & Wyman LLP 11811

19             N. Tatum Boulevard, Suite 3031, Phoenix, AA 85028-1621;

20          4.     Christopher Gabbert, c/o CitiMortgage, Inc., 1000 Technology Drive,

21             O'Fallon, MO 63368;

22          5.     Juan Mayorga, c/o CitiMortgage, Inc., 1000 Technology Drive, O'Fallon,  MO

23             63368;

24          6.     Robert Orcutt, c/o CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO

25             63368;

26          7.     Dana Ross, c/o CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO

27             63368;

28

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

19

**JOINT PRETRIAL ORDER**

8.     Travis Nurse, c/o CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO 63368;

9.     Michael L. Brunson, MAA, Brunson-Jiu, LCC, 8670 W. Cheyenne Avenue, Suite 120, Las Vegas, NV 89129;

10.    Ryan McKinniss, Fearrand Appraisal Team, 18124 Wedge Parkway, #462, Reno, NV 89511; and

11.    Plaintiff reserves to call such further and additional witnesses, in rebuttal, as may be appropriate and necessary herein.

B.    State names and addresses of Defendant's witnesses:

1.     Plaintiff, Leslie J. Shaw;

2.     FRCP 30(b)(6) witness for CitiMortgage, Inc., 1000 Technology Drive, O'Fallon,      MO 63368;

3.     FRCP 30(b)(6) witness for Northwest Trustee Services, Inc. (address unknown as not provided by Defendant);

4.     FRCP 30(b)(6) for Bank of New York Mellon, as Trustee SASCO 2003-37A (address unknown as not provided by Defendant);

5.     FRCP 30(b)(6) for Aurora Loan Services (address unknown as not provided by Defendant);

6.     Travis Nurse, 1000 Technology Drive, O'Fallon,      MO 63368;;

7.     Robert Orcutt 1000 Technology Drive, O'Fallon,      MO 63368;;

8.     Dana Ross 1000 Technology Drive, O'Fallon,      MO 63368;;

9.     Juan Mayorga 1000 Technology Drive, O'Fallon,      MO 63368;;

10.    Katherine M. Barkley,  P.O. Box 1268, Sonoma, CA. 95476;

11.    Janice E. Shaw, 5402 Northeast 195th Street, Lake Forest Park, Washington 98155;

12.    Daniel Leck (Plaintiff's Expert); and

13.    Michael Brunson (Defendant's Expert).

**JOINT PRETRIAL ORDER**

2103599.1

14. Defendant reserves to call such further and additional witnesses, in rebuttal, as may be appropriate and necessary herein.

## IX.

## AGREED-UPON  TRIAL DATES

Counsel have met and conferred herein, on at least three occasions, and hereby submit a list of agreed-upon trial dates as follows: any and all days beginning February 29, 2016 and thereafter.

It is expressly understood by the undersigned that the Court will set the trial of this matter on one (1) of the agreed-upon dates if possible; if not, the trial will be set at the convenience of the Court's calendar.

## X.

## LENGTH  OF TRIAL

It is estimated that the bench trial herein will take a total of 4 days.


APPROVED AS TO FORM AND CONTENT:

DATED:  September 14, 2015


By: /s/ John Ohlson (with authorization)
    JOHN OHLSON, ESQ.
    Attorney for Plaintiff
    LESLIE J. SHAW


DATED:  September 14, 2015    WOLFE & WYMAN LLP


By: /s/ Andrew A. Bao SBN 10508
    ANDREW A. BAO (SBN 10508)
    *aabao@wolfewyman.com*
    COLT B. DODRILL (SBN 9000)
    *cbdodrill@wolfewyman.com*
    WOLFE & WYMAN LLP
    Attorneys for Defendant,
    CITIMORTGAGE, INC.

**JOINT PRETRIAL ORDER**

2103599.1

**COURT ORDER**

**A.**      This case is set down for Court on the fixed/stacked calendar on _____. Calendar Call shall be held on _____.

**B.**      An original and two (2) copies of each trial brief shall be submitted to the Clerk on or before _____.

**C.**      Motions in Limine shall be filed and served by _____.  Oppositions to Motions in Limine shall be filed and served by _____.

**D.**      Court trial date to commence on: _____.

**E.**      Proposed findings of fact and conclusions of law shall be filed on or before _____ _____.

This order shall not be amended except by order of the Court pursuant to agreement of the parties or to prevent manifest in justice.

_____
UNITED STATES DISTRICT JUDGE

DATED: _____

**JOINT PRETRIAL ORDER**

2103599.1